■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL JULIAN, Also Known as CASTO RAMOS, Appellant.—Judgment, Supreme Court, New York County, rendered November 27, 1973, after a jury trial, convicting defendant of the crimes of criminal possession of a dangerous drug in the third and fourth degrees, affirmed. The sole issue troubling our dissenting brethren is whether the contraband presented in evidence on the People's case was introduced with a showing of a chain of evidence sufficient to prove that the dangerous drugs (marijuana and heroin) presented at the trial were the same as those possessed by the defendant at the time of his arrest. When the drugs were seized from the defendant in 1970, they were placed in two suitcases by the police. They were taken to a police laboratory for analysis and thence to the Grand Jury, after which they were deposited in the office of the police property clerk. The suitcases remained there until February, 1973 when they were taken to the police laboratory for reanalysis of the contents. The contents of the suitcases were the same under both the 1970 and 1973 analyses. Each analysis was performed by a different police chemist; however, the drugs had been stored in the suitcases in the same containers which were taken from the defendant and had suffered minor weight losses. One police chemist testified that a moisture loss could result in as much as 10% to 15% weight loss over an extended period. There was further testimony that the analysis used in 1973 was "by instrumentation," which differed from the "wet chemistry" analysis used by the police department in 1970. The 1973 analysis was alleged to be more accurate. Furthermore, the more recent storage methods of the department were designed to prevent weight loss by dehydration. In the case at bar, the seals on the drug containers were not found to have been tampered with, nor was there testimony regarding any inconsistent or inexplicable notations on the seals surrounding the drugs (cf. *People v Connelly,* 35 NY2d 171, 175). The weight

loss of the drugs in this case was less than 10%—well within the weight loss margin allowable, according to the expert testimony. In sum, no irregularities in the chain of custody were revealed. We must keep in mind that analysis of a chain of custody must be kept within reasonable limits. If for example an exhibit is mailed, its identification by each postal employee handling the item cannot be considered as a necessary link in that chain *(People v Jamison,* 29 AD2d 973). Similarly, in the case at bar, the chain of police custody was adequately proven by testimony as to its deposit in the police laboratories and the office of the property clerk *(People v Malone,* 14 NY2d 8). We have also reviewed the other allegations of error and found them without merit and have accordingly affirmed the judgment of conviction. Concur—Tilzer, Lane and Nunez, JJ.; Murphy, J. P. and Lynch, J., dissent in the following memorandum by Lynch, J.: We dissent and would reverse the judgment of conviction and order a new trial. The incriminating marijuana was seized by the police at an apartment used by the defendant on February 12, 1970. It was put into two suitcases by Officer Tasik with other seized drugs for the possession of which the jury exonerated the defendant. Tasik took the suitcases to the precinct and, on the following day, to the police laboratory where they remained for analysis of the contents until March 4, 1970 when Tasik picked them up, took them to the Grand Jury and then deposited them in the property clerk's office. When the suitcases were sought in order to produce them at the trial in 1973—the trial was delayed because the defendant had absconded—they could not be found at the property clerk's office. They were finally located on February 7, 1973 at the police laboratory where the contents had been reanalyzed. The contents were erroneously admitted into evidence. Since marijuana "is not patently identifiable or is capable of being replaced or altered, admissibility generally requires that all those who have handled the item 'identify it and testify to its custody and unchanged condition' *(People v Sansalone,* 208 Misc 491, 493)" *(People v Connelly,* 35 NY2d 171, 174). The marijuana was not where it was supposed to be. How and when the suitcases got to the police laboratory the second time is unknown. Their whereabouts and who had access to them are, under the testimony given, a total mystery from March 4, 1970 until February 7, 1973. There was not even any testimony from the detective who did the reanalysis as to the state of the seals put on the suitcases by the detective who made the original analysis and the marijuana itself was in containers that were not sealed. It is conceded that there was a variance in the weights of the narcotics in the suitcases between the first and second analysis, and, while this may have an innocent explanation, it adds emphasis to the necessity of a complete chain of custody.